IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| TERRENCE ROSSER | : | |
| 2551 North 30th Street | : | |
| Philadelphia, PA 19132 | : | CIVIL ACTION NO. 26-cv-_____ |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| c/o Law Department | : | |
| City of Philadelphia | : | |
| 1515 Arch Street | : | |
| Philadelphia, PA 19102 | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant. | : | |
| | : | |

_____ :

## COMPLAINT

Plaintiff Terrence Rosser, by and through his undersigned counsel, by way of Complaint against Defendant City of Philadelphia alleges:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the subject matter of this Complaint pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(1), 1343(a)(3) and 1343(a)(4).

2.      This Court has supplemental jurisdiction over Plaintiff's negligence claims pursuant to 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as Plaintiff's Section 1983 claim.

3.      Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as the acts and/or omissions giving rise to the claims set forth in this Complaint occurred herein.

**PARTIES**

4.      Plaintiff Terrence Rosser ("Plaintiff" or "Mr. Rosser") is an adult citizen of the United States and a resident of the City of Philadelphia, Commonwealth of Pennsylvania.

5.      Defendant City of Philadelphia ("Defendant" or "the City") a municipality and political subdivision of the Commonwealth of Pennsylvania responsible for the operation, training, supervision, and discipline of the Philadelphia Police Department ("PPD"), which was and is responsible for screening, hiring, training, supervising, and disciplining its agents/servants/employees.

6.      At all relevant times, Defendant, its officers, officials and employees were acting under color of state law.

**FACTUAL ALLEGATIONS**

7.      On Monday August 26, 2024, at approximately 9:15PM, Mr. Rosser was driving east on Cumberland Street on his motorcycle.

8.      Eastbound traffic on Cumberland Street does not have a stop sign at the intersection with North Corlies Street, so when Mr. Rosser approached the intersection of Cumberland Street and North Corlies Street, he had right of way and lawfully proceeded through the intersection.

9.      A black 2017 Hyundai Elantra traveling Northbound on Corlies Street at speeds well in excess of the 25 mile-per-hour residential speed limit, sped into the intersection and struck Mr. Rosser.

10.      The Hyundai had been identified as a stolen vehicle and was being pursued by a Philadelphia Police vehicle.

11.      The police vehicle was immediately behind the Hyundai—one to two vehicle lengths from the Hyundai—as the Hyundai entered the intersection and struck Mr. Rosser.

12. The Hyundai struck Mr. Rosser as a direct and proximate result of the pursuit by Philadelphia Police officers.

13. The individual Philadelphia Police officers involved in the pursuit and dispatch related to the pursuit of the black 2007 Hyundai Elantra described herein shall be collectively referred to throughout this Complaint as the "Pursuing Officers".

14. After striking Mr. Rosser, the black Hyundai crashed into a nearby house, smashing the exterior wall and causing the house to partly collapse.

15. The driver of the Hyundai and any occupants fled the scene on foot.

16. The force of the impact from the stolen vehicle was such that Mr. Rosser was thrown from his motorcycle into the air and through the closed front door of the nearby house at 2501 North Corlies Street. Mr. Rosser landed on the floor of the front room inside 2501 North Corlies Street.

17. Mr. Rosser's motorcycle was overturned from the force of the collision.

18. After the impact, a police officer entered the building where Mr. Rosser was lying injured, asked Mr. Rosser what had happened, then left the building.

19. Mr. Rosser was transported by ambulance from the scene of the crash to Temple University Hospital Main Campus ("Temple Hospital").

20. Mr. Rosser's right ankle was fractured and/or dislocated with the bone exposed to air, his right knee was swollen, and his right leg was in severe pain.

21. He had bruising on both arms and his forehead, and pain throughout his chest and upper body.

22. Mr. Rosser was diagnosed with a compound fracture to his right ankle, fractures of his right medial malleolus, right fibular shaft, and displacement of the talus in his right ankle.

3

23.     On August 27, 2024, Mr. Rosser underwent incision and drainage and reparative surgery on his right ankle.

24.     Mr. Rosser remained at Temple Hospital for ten days, from August 26, 2024, through September 5, 2024.

25.     On September 5, 2024, he was discharged to Hillcrest Skilled Nursing Facility ("Hillcrest") to receive inpatient physical therapy.

26.     Mr. Rosser remained at Hillcrest until September 16, 2024, where he underwent physical therapy for difficulty walking and muscle weakness.

27.     Months after the impact, Mr. Rosser continued to experience constant soreness and pain in his chest and upper body.

28.     As of this date, Mr. Rosser continues to suffer with stiffness, weakness and restricted motion along with profound scarring from his surgeries.   He cannot run, and has difficulty walking long distances, climing ladders, and carrying items up and down steps, is unable to stand for more than 10-15 minutes without a break, which impacts his work, and is unable to participate in play and physical activities he formerly engaged in with his children.

29.     The Pursuing Officers observed and knew that the pursuit was in a high density, traffic congestion area.

30.     The Pursuing Officers continued the high-speed pursuit despite knowing that they were endangering other motorists and bystanders.

31.     No forcible felony suspect information existed at the time pursuit was commenced or during the pursuit.

32.     Supervisors were available by radio communication.

33.     No supervisor ordered termination of the pursuit.

34. Pursuing Officers maintained a close following distance.

35. This pursuit limited safe driver maneuvering options.

36. The pursued vehicle, while under active pursuit pressure, traveled at high speed and struck Mr. Rosser.

37. The Pursuing Officers knew or should have known that pursuit of fleeing persons through intersections, without regard to the traffic signals, will endanger innocent drivers like Mr. Rosser.

38. Despite the presence of the risks of which the Pursuing Officers were or should have been aware, the continued the pursuit without termination or containment measures.

39. The Pursuing Officers maintained emergency pressure on the pursued vehicle and directed its path into the intersection where Mr. Rosser was struck.

40. The Pursuing Officers used tactical positioning and speed that eliminated safe disengagement options and channeled the pursued vehicle into Mr. Rosser.

41. The risk of harm to other motorists travelling on cross streets, like Mr. Rosser, was a foreseeable and direct consequence of the pursuit tactics used by the Pursuing Officers.

42. The pursuit speed exceeded the speed limit, despite congested and high-density City traffic conditions.

43. The pursuit process allowed ample time for supervisory intervention and termination decisions.

44. The pursuit lasted long enough for evaluation and reconsideration.

45. Termination could have occurred without losing the suspect.

46. Alternative apprehension methods were available.

47. The offense did not present immediate lethal danger.

48.    Traffic conditions increased foreseeable harm risk.

49.    The Pursuing Officers escalated speed rather than reducing danger.

50.    The risk to other motorists, including Mr. Rosser, was obvious.

51.    As a direct and proximate result of the conduct of the Pursuing Officers, Mr. Rosser suffered the serious injuries described above.

52.    Mr. Rosser has suffered and will continue to experience pain and suffering as a result of his injuries.

53.    Mr. Rosser has suffered and will continue to suffer mental anguish and distress as a result of his injuries.

54.    Mr. Rosser has suffered financial loss, including lost income, and the cost of medical expenses, and will continue to do so in the future.

55.    Mr. Rosser suffered violation of his right to substantive Due Process under the 14th Amendment to the United States Constitution.

## COUNT I
## Municipal Liability – 42 U.S.C. § 1983

54.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

Summary of Municipal Liability Allegations

55.    At all relevant times, the City acted through final policymakers, including the Police Commissioner and senior command staff responsible for departmental policy and operational oversight.

56.    These policymakers were responsible for establishing, implementing, and enforcing policies governing police vehicle pursuits conducted by PPD officers.

57. A municipality is liable under 42 U.S.C. §1983 when a constitutional injury results from an official policy, custom, practice, or failure to train or supervise reflecting deliberate indifference to constitutional rights.

58. The City has long been aware that police vehicle pursuits create a substantial and obvious risk of death or serious bodily injury to innocent motorists, pedestrians, cyclists, and bystanders.

59. Despite this knowledge, the City has maintained policies, customs, and practices that permit officers to initiate and continue high-risk vehicle pursuits through densely populated urban neighborhoods, commercial corridors, and residential streets.

60. These policies and practices place apprehension of pursued suspects above the safety of innocent members of the public.

61. The City has failed to adequately train officers regarding when pursuits must be terminated and how officers must weigh risks to innocent civilians.

62. The City has further failed to adequately supervise officers engaged in pursuits and has failed to discipline officers whose pursuits result in civilian injuries.

63. These failures created and perpetuated a culture within the Philadelphia Police Department in which dangerous vehicle pursuits were tolerated and expected.

Pattern of Pursuit-Related Collisions Demonstrating Municipal Custom

63. On April 15, 2017, Philadelphia police officers pursued a vehicle near the 69th Street Transportation Center, during which the pursued vehicle struck pedestrians crossing the street, including Lyesha Clark.

64. On January 31, 2018, officers pursued a vehicle suspected of being stolen. The pursued driver collided with a vehicle occupied by Jerome Peel.

65. On May 1, 2018, during a police pursuit a pursued driver ran a traffic signal and collided with Marcus Tomlin.

66. On May 29, 2018, officers pursued a vehicle along Tulpehocken Street where the pursued driver collided with a vehicle carrying passenger Augustus Burns.

67. On June 2, 2018, officers pursued a driver near Moyamensing Avenue and Broad Street where the pursued driver traveled the wrong way down a one-way street and collided with Anthony Fusco.

68. On January 8, 2019, a pursuit through the Aramingo Avenue corridor resulted in a collision involving Lydia Castro.

69. On February 28, 2019, during a police pursuit a pursued vehicle struck pedestrian Barbara Brooks.

70. On April 9, 2019, officers pursued a stolen municipal truck through residential streets where the pursued driver mounted a curb and struck pedestrian Yvette Samuel.

71. On May 11, 2019, a pursued vehicle involved in a police pursuit collided with the vehicle of Beatrice Connor.

72. On May 11, 2019, a police pursuit initiated after a traffic stop resulted in a multi-vehicle collision involving Cierra Freeman.

73. On November 30, 2019, a vehicle being pursued by police collided with a vehicle driven by Jimmie Little.

74. On September 15, 2020, a pursuit resulted in a collision involving Toriann Pomroy.

75. On December 28, 2020, a pursued vehicle ran a red light during a police pursuit and collided with Khalidah Barakat.

76. On February 19, 2021, a high-speed pursuit resulted in a collision involving Officer Christopher Swinarski.

77. On June 12, 2021, officers pursuing ATVs through city streets created a situation in which pedestrian Jose Vazquez was struck.

78. On April 15, 2022, a pursued vehicle being pursued by police collided with Derek House.

79. On May 11, 2022, a police pursuit resulted in the pursued vehicle striking pedestrian Crystal Rosado.

80. On May 22, 2022, a pursued vehicle involved in a police pursuit ran a stop sign and struck bicyclist Yasmin Salaam.

81. On June 22, 2022, pedestrian Abraham Adams was struck by a vehicle pursued from police.

82. On June 23, 2022, a police pursuit resulted in a collision involving Sherryl Hall.

83. On July 7, 2022, a police pursuit involving a driver running red lights resulted in a crash that injured Kristen Behrens.

84. On September 12, 2022, a pursued vehicle ran a red light during a pursuit and collided with Lorenzo McQuiller.

85. On October 6, 2022, a pursued vehicle involved in a police pursuit collided with a vehicle occupied by Leslie Jones.

86. On December 19, 2022, a police pursuit resulted in a collision involving Fletcher Seay.

87. On January 31, 2023, Ellis Rich attempted to avoid a pursued vehicle involved in a police pursuit but was nevertheless struck.

88. On April 1, 2023, a pursued vehicle involved in a police pursuit collided with a vehicle driven by Maribel Cubero, injuring her and passenger Marisol Linares.

89. On April 13, 2023, during a pursuit, officers caused a vehicle to spin and strike a parked vehicle belonging to Alton Hyman-Williams.

90. On April 28, 2023, a pursued vehicle ran a stop sign during a police pursuit and collided with Veronica Rosario.

91. On December 26, 2023, a vehicle being pursued by police collided with Cortney Dunkley near Broad Street.

92. On April 20, 2024, a pursued vehicle collided with a vehicle carrying passengers Maureen Gadalla and Isis Shimoyama.

93. On August 30, 2024, a Philadelphia police vehicle engaged in a pursuit collided with a vehicle operated by Michael Bivans.

94. These incidents represent only a portion of the pursuit-related crashes involving Philadelphia police officers during the relevant period.

95. These incidents resulted in claims against the City and, in most, monetary settlement with those claimants/plaintiffs either without the filing of suit, or during litigation.

96. The incidents described above demonstrate a recurring pattern in which Philadelphia police officers initiate or continue vehicle pursuits through populated areas despite escalating risks to innocent motorists and pedestrians.

97. These and other numerous civil actions filed in the United States District Court for the Eastern District of Pennsylvania and the Court of Common Pleas for the First Judicial District of Pennsylvania have alleged that Philadelphia police pursuits resulted in catastrophic injuries to innocent civilians.

98.    The repetition of these incidents over many years demonstrates that dangerous pursuits were not isolated occurrences but instead reflected systemic practices within the Philadelphia Police Department.

Prior Litigation Against the City of Philadelphia Involving Police Pursuits

99.    These lawsuits include cases brought by pedestrians, bicyclists, and motorists injured during police pursuits through city streets.

100.    Each such lawsuit required investigation by the City and its attorneys and placed municipal policymakers on notice that pursuit practices posed a substantial risk to innocent members of the public.

101.    Despite this notice, the City failed to implement adequate reforms to reduce the dangers associated with police vehicle pursuits.

Municipal Policy Encouraging Dangerous Pursuits

102.    Police vehicle pursuits in Philadelphia are supposed to be governed by PPD Directives 9.4 (Vehicular Pursuits) and 9.7 (Safe Operation of Police Vehicles).

103.    These directives provide officers substantial discretion to initiate and continue pursuits based on their own assessment of the circumstances.

104.    These directives allow officers to continue pursuits even where substantial risks to innocent civilians are present.

105.    These directives do not require officers to terminate pursuits when suspects are identifiable and could be apprehended later through investigative means.

106.    These directives further fail to require immediate supervisory termination when pursuits create substantial risks to pedestrians or uninvolved motorists, but instead allow broad, virtually unfettered discretion.

11

107.    These deficiencies encourage officers to continue dangerous pursuits through crowded urban streets.

Dangerous Pursuits for Minor Offenses

108.    Many Philadelphia police pursuits are initiated for minor or non-violent offenses.

109.    Such offenses include traffic violations, equipment violations, and suspected stolen vehicles.

110.    Initiating high-speed pursuits for such minor offenses creates a grossly disproportionate risk to innocent members of the public.

111.    In many circumstances suspects could be identified and apprehended later through investigative means.

112.    Despite this fact, the City permits officers to initiate and continue pursuits under such circumstances.

113.    The City fails to discipline or re-train officers who engage in such conduct.

114.    This policy choice predictably results in high-speed pursuits through populated areas where innocent civilians are present.

Failure to Terminate Pursuits at Intersections and Red Lights/Stop Signs

115.    Numerous pursuit-related crashes occur when pursued drivers enter intersections against traffic signals while being pursued by police, as occurred in the collision involving Mr. Rosser.

116.    High-speed pursuits through intersections significantly increase the likelihood that pursued vehicles will collide with cross-traffic.

117.    Police officers are trained that intersections represent one of the most dangerous locations during vehicle pursuits.

12

118.    Despite this known danger, Philadelphia police officers frequently continue pursuits through intersections where traffic signals are present.

119.    Such offending officers are not disciplined or subject to re-training.

Custom and Practice of Continuing Pursuits After Policy Violations

120.    Philadelphia police officers frequently continue vehicle pursuits even after circumstances arise that make the pursuit extraordinarily dangerous.

121.    Such circumstances include suspects who are not engaged in or suspected of serious offenses, traveling the wrong way on one-way streets, disregarding traffic signals, entering heavily populated residential areas, and engaging in and continuing pursuits where there was substantial vehicle and pedestrian traffic placing innocent persons at risk.

122.    Despite these dangers, officers frequently continue pursuits under such conditions.

123.    This practice reflects a custom within the Philadelphia Police Department of continuing pursuits despite obvious and escalating risks to the public.

124.    The City has failed to meaningfully investigate, discipline or re-train officers who continue pursuits under such dangerous conditions.

Failure to Discipline and Ratification

125.    The City has maintained a custom and practice of failing to meaningfully discipline officers who engage in dangerous pursuits.

126.    Officers whose pursuits result in serious collisions often face little or no discipline.

127.    Officers involved in pursuit-related crashes frequently remain employed without corrective action.

128.    This failure to discipline communicates to officers that continuing dangerous pursuits will not result in meaningful consequences.

13

129.    The City's failure to discipline officers involved in dangerous pursuits constitutes ratification of unconstitutional conduct.

Statistical Pattern of Pursuit-Related Crashes

130.    Pennsylvania law requires law-enforcement agencies to report vehicle pursuits to a statewide reporting system administered by the Pennsylvania State Police.

131.    The reporting system includes pursuit incidents reported by the Philadelphia Police Department.

132.    The City of Philadelphia routinely fails to report vehicle pursuits to the statewide reporting system.    https://www.nbcphiladelphia.com/investigators/hundreds-of-philadelphia-police-pursuits-missing-from-state-database/4058894/

133.    City Policymakers had access to information concerning pursuit incidents and pursuit-related crashes occurring within Philadelphia.

134.    Investigative reporting analyzing police crash records and civil litigation has documented repeated pursuit-related collisions involving Philadelphia police officers.

135.    These statistics and reports placed City policymakers on actual and constructive notice that the City's pursuit policies, training, discipline were inadequate.

136.    Despite this notice, the City failed to implement adequate reforms.

History of PPD Pursuit Practices

137.    The dangers associated with police pursuits in Philadelphia have been repeatedly documented in investigative reporting and civil litigation.

138.    Media investigations analyzing police crash records and litigation have reported that numerous officers have been involved in repeated preventable crashes during their careers.

139.    According to an investigation by the *Philadelphia Inquirer*, based upon right to know requests and other reliable information, found, that as of April 2025, going back to 2018:

a.    Almost half of all reported pursuits by Philadelphia police were not justified under department policies.

b.    Philadelphia police receive no training on pursuit tactics and no retraining of officers involved in violations of pursuit policies.

c.    There is little to no accountability for the reckless and unjust tactics that risk the lives of those involved in a Philadelphia Police pursuit or innocent bystanders.

d.    The PPD had never revoked any pursuit officer's driving clearance.

e.    As of since 2020, settlements arising from Philadelphia Police vehicle pursuits have amounted to $20 million.

https://www.inquirer.com/crime/a/philadelphia-police-crashes-teenagers-accountability-20250403.html

140.    These incidents have generated public criticism and calls for reform of police pursuit practices.

141.    Despite repeated notice and public scrutiny regarding pursuit dangers, the City failed to implement adequate safeguards to protect innocent civilians.

Supervisory Oversight of Police Pursuits

172.    PPD Directives 9.4 and 9.7 requires supervisors to closely monitor pursuits and terminate them when the pursuits present a danger to innocent drivers and pedestrians.

173.    Despite these requirements, supervisors frequently fail to terminate pursuits that violate the directives or present a danger to innocent drivers and pedestrians.

174.    Despite these failures, these supervisors are not meaningfully investigated, discipline or re-trained.

15

175. These failures by and in regard to the supervisors communicates to supervisors and the officers they oversee that continuing dangerous pursuits will not result in meaningful consequences.

176. The City's failure to discipline supervisors who fail to appropriately monitor and address dangerous pursuits constitutes ratification of unconstitutional conduct.

Deliberate Indifference and Causation

177. The repeated nature of these incidents and the foregoing deficiencies placed City policymakers on actual and constructive notice that the City's pursuit policies, training, supervision, and discipline were inadequate.

178. Despite this knowledge, the City failed to implement meaningful reforms.

179. The City's policies, customs, and failures described above were the moving force behind the constitutional violations suffered by Plaintiff.

180. The City's failure to implement meaningful reforms constituted deliberate indifference to these unconstitutional policies and customs.

181. As a direct and proximate result of these unconstitutional policies and customs, Plaintiff suffered severe injuries and damages, and the violation of his right to substantive Due Process under the 14th Amendment to the United States Constitution.

182. Pursuant to 42 U.S.C. § 1988, the City is responsible for Plaintiff's attorney fees and costs.

## COUNT II
### Pennsylvania State Law — Negligence

183. All preceding allegations are incorporated by reference as if fully set forth herein.

184. At all relevant times, the Pursuing Officers were agents/employees of the City.

16

185.   The Pursuing Officers were operating vehicles owned by the City and had the City's permission to operate said vehicles.

186.   The Pursuing Officers owed a duty to operate their police vehicles with due regard for the safety of all persons on the roadway, including other motorists proceeding lawfully on the roadways.

187.   The Pursuing Officers breached that duty by operating police vehicles at excessive speeds in congested traffic, maintaining close pursuit pressure, and channeling the pursued vehicle into an active intersection, without right of way.

188.   The Pursuing Officers' operation of the police vehicles physically altered the path of the pursued vehicle and created the collision risk.

189.   The collision was a foreseeable result of police vehicle operation under these conditions.

190.   The conduct of the Pursuing Officers was negligent.

191.   As a direct and proximate result, Mr. Rosser suffered injuries and associated damages recoverable under Pennsylvania law.

192.   The City is liable for the negligent acts of the Pursuing Officers, pursuant to the motor vehicle exception of the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8542(b)(1).

## JURY DEMAND

Mr. Rosser demands a trial by jury as to each count and claim.

**WHEREFORE**, Plaintiff demands judgment as to each count, along with costs, attorneys' fees, interest and such other and further relief as the Court may deem just and proper.

**WEIR LLP**

DATE: April 6, 2026

Alan L. Yatvin, Esquire
Attorney ID No. 38716
The Widener Building
1339 Chestnut Street, Suite 500
Philadelphia, PA 19107
(215) 665-8181 (Phone)
(215) 241-7751 (Fax)
ayatvin@weirlawllp.com

*Attorneys for Plaintiff*

18